# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-0525V

| | |
|---|---|
| MICHELLE PICKETT,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: September 22, 2023<br><br>Special Processing Unit (SPU); Findings of Fact; Statutory Six Month Requirement; Tetanus Diphtheria Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Felicia Langel*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT [1]

On January 11, 2021, Michelle Pickett filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") from a tetanus-diphtheria-pertussis ("Tdap") vaccine she received on June 30, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**Relevant Procedural History**

On October 24, 2022, about 22 months after the case was initiated, Respondent filed his Rule 4(c) Report, arguing that Petitioner "has failed to satisfy the threshold that she suffered from her alleged vaccine injury for more than six months." Rule 4(c) Report (ECF No. 24) at 5. Petitioner thereafter filed a Motion for Ruling on the Record ("Mot.") on January 18, 2023. ECF No. 26. Respondent filed a response ("Resp.") on March 17, 2023. ECF No. 27. The matter is now ripe for adjudication.

## II.  Factual History

### A.  *Medical Records*

Petitioner received a Tdap vaccine in her left deltoid during an annual physical with her primary care provider ("PCP") on June 30, 2020, in Mentor, OH. Ex. 1 at 16. Sixteen days later (July 16, 2020), she returned to her PCP with reports of left shoulder pain that she reported began one hour after her vaccination. *Id*. at 7. On exam, Petitioner had "severe" tenderness to palpation and reduced range of motion. *Id*. at 8. Her PCP suspected a SIRVA injury, prescribed naproxen, and referred Petitioner to an orthopedist. *Id*.

On July 30, 2020, now one month after vaccination, Petitioner presented to an orthopedist for evaluation. Ex. 5 at 7. Petitioner reported "significant pain" in her left shoulder that had gotten worse over time. *Id.* She was diagnosed with tendinopathy of the left rotator cuff, prescribed anti-inflammatory medication, and referred to physical therapy. *Id*. at 8. Petitioner was offered a steroid injection, but declined due to experiencing side effects with previous steroid treatment. *Id*.

On August 4, 2020, Petitioner obtained an initial physical therapy evaluation. Ex. 4 at 28. She complained of disrupted sleep and decreased functional abilities. *Id*. She had an initial DASH disability score of 50%. *Id.* at 31-32. Petitioner had a total of eleven physical therapy treatments through December 1, 2020. *Id*. at 2-25. At her final treatment, her range of motion was almost normal, but she "still had some pain/weakness at EROM for scaption." *Id*. at 2. She had met all her physical therapy goals except attaining full shoulder strength. *Id*. Her DASH score had fallen to 11%, reflecting continued reports of mild difficulty with daily activities. *Id*. at 5. Petitioner rated her pain at 2/10. *Id*. at 3.

Petitioner returned to her orthopedist for a final follow-up on December 2, 2020. *Id*. at 2. At that appointment, Petitioner reported that she felt that her shoulder "was back to normal," and that she was "able to do all the things she needs to be able to do" with it. *Id*. Her shoulder exam was normal, but strength was not tested. *Id*. at 3. Petitioner was

2

advised to continue her home exercises "to continue keeping her shoulder strong" and was released for all activities "as tolerated." *Id*. at 2.

Petitioner did not seek any further medical treatment for her shoulder injury.

### B. *Witness Testimony*

Petitioner submitted a declaration stating only that she "suffered the residual effects or complications of [her] left shoulder injuries for more than six months," without further detail. Ex. 2 at ¶5.

Petitioner's husband, Craig Teubl, submitted an affidavit in support of the claim. Ex. 8. He recalled that Petitioner displayed "little improvement" during her time in physical therapy. *Id*. at ¶5. He stated that Petitioner "was in constant pain" for "around eight months." *Id*. at ¶8. He remembered helping Petitioner with dressing because she could not lift her arm over her head. *Id*. at ¶6, 10. In February 2021 (eight months after vaccination), he recalled observing Petitioner donning a long-sleeved dress – which was challenging for her and caused her to wince in pain. *Id*. at ¶10. He also stated that Petitioner was unable to lift a wheelchair into the trunk of the car. *Id*. at ¶7, 9.

### III. Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical

events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

4

### IV. Finding of Fact - Severity

To establish six months of residual effects, Petitioner must demonstrate that her symptoms more likely than not continued until December 30, 2020. The record is clear, and Respondent does not dispute, that Petitioner had continuous treatment for her injury through the orthopedist appointment on December 2, 2020 – five months and two days after her vaccination. Ex. 5 at 2. Respondent argues that Petitioner has not provided preponderant evidence that her injury lasted beyond this date, noting that Petitioner reported her shoulder as "back to normal" at this time, and that her shoulder exam revealed normal range of motion and negative impingement testing. Resp. at 7-9. Thus, the medical record (which stops with this December 2nd treatment visit) establishes Petitioner had by this time recovered from her SIRVA.

The record is very thin on this issue, and Respondent reasonably raises severity as a potential stumbling-block to entitlement. But I am nevertheless able to find, based on the totality of the evidence, that there is *barely* enough preponderant support for the conclusion that Petitioner's symptoms lasted the six months required by the Act.

A combination of record proof plus witness statements permit me to reach this conclusion. First, I note that the December 2020 records do not unambiguously establish that Petitioner's SIRVA had resolved. At the time of her discharge from physical therapy on December 1, 2020, Petitioner continued to demonstrate strength deficits and pain with certain movements, specifically scaption (the movement of raising the arms up and forward). Ex. 4 at 2. Although she had made significant improvement with her functional abilities, she had not met all of her treatment goals, and continued to report mild difficulty with several daily tasks. *Id*. at 5. The following day, at her final orthopedist appointment, she did report recovery, and showed no deficits on exam. Ex. 5 at 2-3. But the record does not indicate any strength testing, however, despite evidence that this remained an issue. Further, while Respondent is correct that the orthopedist did not recommend any additional formal treatment, Petitioner was instructed to continue doing home exercises, with an expressly-stated focus on strengthening, and she was released to return to all activities "as tolerated," suggesting that she understood there to be at least some mild remaining symptoms at that time. *Id*. at 2. This evidence, limited as it is, does allow the conclusion that Petitioner's condition had not yet *fully* recovered, but would instead remain a lingering issue.

Second, the witness statements bulwark this construction of the medical records. Although Petitioner's declaration does not provide any helpful detail about her experience with her injury, her husband, Craig Teubl, provided affidavit testimony. *See* Ex. 2; Ex. 8. Respondent rightfully notes that some of Mr. Teubl's testimony seems to contradict the medical record evidence – specifically that Ms. Pickett experienced "little improvement'

5

from physical therapy. Resp. at 7, footnote 2. However, the conflicting testimony reflects subjective opinion, rather than factual observation, and I need not give it weight. At the same time, however, Mr. Teubl does provide observations of Ms. Pickett's behavior that make it more likely than not her symptoms persisted somewhat. For example, Mr. Teubl described Ms. Pickett as being unable to lift her mother's wheelchair into the trunk of the car, a deficit that lasted through June 15, 2021. Ex. 8 at ¶7, 9. He also described Ms. Pickett struggling to don a long-sleeved dress on February 20, 2021, observing her wince in pain during the task. *Id*. at 10. These reflect firsthand observations, factual in nature, that corroborate the deficits – pain with scaption movements and weakness –documented in Petitioner's medical records at the end of her formal treatment. *See* Ex. 4 at 2.

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on severity, if weakly. This is a very "close-call," and in such cases, Program case law counsels deciding the matter in a petitioner's favor. *Roberts v. Sec'y of Health & Human Servs*., No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). (I also note, however, that these same facts establish that Petitioner's SIRVA was *exceedingly mild*, and therefore no more than a modest pain and suffering award is warranted).

## Conclusion

**Based on the record as a whole, Petitioner has preponderantly established that she suffered the residual effects of her vaccine-related injury for at least six months as required by the Vaccine Act.**

**Respondent shall file, by <u>Monday, October 30, 2023</u>, a status report indicating how he intends to proceed in light of this fact ruling.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master